**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BANK OF AMERICA, N.A. Successor** | : | |
| **by Merger to PROGRESS BANK,** | : | **CIVIL ACTION** |
|     **Plaintiff,** | : | |
| | : | |
|     **v.** | : | |
| | : | |
| **STEWART GRITZ,** | : | |
|     **Defendant.** | : | **NO. 09-1842** |

GENE E.K. PRATTER, District Judge                                          March 26, 2010

## **MEMORANDUM**

### I.    INTRODUCTION

The Court previously entered Confessed Judgment in favor of Bank of America ("BOA") against Stewart Gritz for defaulting on a $2,899,629.03 Promissory Note he entered into with BOA on behalf of himself individually and his two companies, Oxford Bookbinding Company and Oxford Property Management. Currently pending before the Court is Mr. Gritz's Petition to Open Judgment by Confession and for Stay of Execution. Mr. Gritz contends that two Limited Guaranty agreements he entered into with BOA subsequent to the Promissory Note limit his total liability for default to $500,000. Because the Limited Guaranty agreements, by their express terms, only apply to Mr. Gritz's liability for the debts of his two companies, and not to his personal liability, his Petition will be denied.

### II.    BACKGROUND[1]

In 1998, Mr. Gritz purchased a publishing company, Oxford Bookbinding Company, for

---

[1] Because Mr. Gritz does not set forth a full statement of facts in his Petition, the following facts are taken from the record and from the parties' briefs where there is record support. Where there is a factual dispute, as long as Mr. Gritz has record support for his position, the facts are viewed in the light most favorable to him.

$4,800,000. He financed this purchase by obtaining a personal loan for $4,500,000.

Several years later, on March 27, 2003, Mr. Gritz obtained a $2,899,629.03 loan from BOA's predecessor, Progress Bank, to refinance the balance due on the $4,500,000 loan. Mr. Gritz, in his individual capacity, along with Oxford Bookbinding Company, and Oxford Property Management are all co-borrowers, jointly and severally, on the $2,899,629.03 loan. (Def.'s Appendix at A22.) Mr. Gritz signed the Promissory Note for this loan in his individual capacity, and on behalf of his two companies. (Def.'s Appendix at A24.) In addition to the $2,899,629.03 loan, BOA made approximately eight other loans in various amounts to Oxford Bookbinding and Oxford Property, totaling in the aggregate approximately $900,000. (See Pl.'s Ex. E, BOA's Demand Letter to Mr. Gritz; Pl.'s Ex. 5, Deposition of Stewart Gritz at 75-6; Oral Argument Tr. at 35, 36.)

Mr. Gritz subsequently entered into two Limited Guaranty agreements with BOA on December 2, 2005 and December 2, 2006, respectively. The Limited Guaranty agreements, which contain essentially identical language, provide that "the liability of Guarantor under this Guaranty for the Indebtedness shall not exceed in the aggregate FIVE HUNDRED THOUSAND U.S. Dollars ($500,000.00) maximum for borrowings by Oxford Bookbinding and/or Oxford Property Management, LLC." (Def.'s Appendix at A25, December 2, 2005 Limited Guaranty; Def.'s Appendix at A33, December 2, 2006 Limited Guaranty.)

Oxford Bookbinding Company and Oxford Property Management have since filed for bankruptcy, and Mr. Gritz has defaulted on his payments under the Promissory Note, leading BOA to file a Complaint in Confession of Judgment in this Court, as authorized by a provision in the Promissory Note.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 60 provides the procedure for attacking a federal judgment entered on a confession of judgment. Minnesota Corn Processors, Inc. v. McCormick, No. 99-5932, 2000 WL 948659, at *4 (E.D. Pa. July 7, 2000). Rule 60(b) states, in pertinent part, that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . ." Fed. R. Civ. P. 60(b). State law governs the substantive aspects of Rule 60(b) motions to open confessed judgments. F.D.I.C. v. Deglau, 207 F.3d 153, 166-67 (3d Cir. 2000).

Under Pennsylvania law, a motion to open is to be granted "[i]f evidence is produced which in a jury trial would require the issues to be submitted to the jury." Pa. R. Civ. P. 2959(e). Thus, the standard of sufficiency is that of a directed verdict. Deglau, 207 F.3d at 168 (citing Suburban Mechanical Contractors, Inc. v. Leo, 502 A.2d 230, 232 (Pa. Super. Ct. 1985)). In ruling on a petition to open confessed judgment, the court must view all the evidence in the light most favorable to the movant and accept as true all evidence and proper inferences from it which support the defense while rejecting adverse allegations of the party obtaining the judgment. Id. However, in making a motion to open, a petitioner (in this case, Mr. Gritz) may not rest on mere assertions, but must offer "clear, direct, precise and 'believeable' evidence of his meritorious defenses." Id. (internal citation and quotations omitted).

## IV. DISCUSSION

Mr. Gritz's sole contention is that his personal liability as a joint and several co-borrower with his two companies under the Promissory Note was superseded by the Limited Guaranty agreements limiting his personal liability to $500,000. Mr. Gritz argues that any contrary

3

construction of the loan documents would lead to the absurd result of Mr. Gritz guaranteeing his own obligation to repay the Promissory Note.[2]

Mr. Gritz further argues that this "absurd result" creates an ambiguity in the loan documents, thereby permitting Mr. Gritz to introduce extrinsic evidence in support of his interpretation of the loan documents. In this regard, Mr. Gritz urges the Court to consider his own, uncorroborated deposition testimony that three BOA loan officers told him that his maximum personal exposure to BOA for all outstanding liabilities would be $500,000 as a result of the Limited Guaranty agreements.

Under familiar Pennsylvania law, "when the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself." Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004) (citations omitted). However, when "an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances." Id.

A contract is ambiguous only "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Id. Whether ambiguity exists should not "be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." Chester Upland Sch. Dist. v. Edward J. Meloney, Inc., et al., 901 A.2d 1055, 1060 (Pa. Sup. Ct. 2006) (citations omitted). It is the court's function "to decide, as a matter of law, whether the contract

---

[2] In his Petition, Mr. Gritz also argues that Bank of America failed to explain to him the principal amount and interest amount and credit due, and that Bank of America's Notice to Mr. Gritz was deficient because it was pursuant to state procedural law and the not the rules of this Court. At Mr. Gritz's deposition, however, Mr. Gritz's counsel withdrew these defense theories and grounds. (Gritz Dep. at 4.)

terms are clear or ambiguous." Id.

Here, the loan documents at issue are not ambiguous. The Promissory Note provides that Mr. Gritz and his two companies, Oxford Bookbinding Company, and Oxford Property Management LLC, are three co-borrowers and are "jointly and severally" liable for loan payments. (Def.'s Appendix at A22.) Both Limited Guaranty agreements identify as the "BORROWER: Oxford Bookbinding Company" and as the "GUARANTOR: Stewart Gritz." (Def.'s Appendix at A25, A33.) And both agreements provide that the $500,000 limit applies to "borrowings by Oxford Bookbinding and/or Oxford Property Management, LLC." (Id.) Nowhere do the Limited Guaranty agreements provide that Mr. Gritz's obligation to repay his *own* debts to BOA is limited to $500,000.[3] Rather, these agreements simply and clearly limit his guarantee (as opposed to his borrowing) to a maximum of $500,000 for the borrowing of his companies.

There is, of course, nothing absurd about Mr. Gritz acting as a co-borrower under the Promissory Note and also as a guarantor under the Limited Guaranty agreements for the liabilities of his two companies. In fact, that arrangement is the only logical construction of these loan documents. As the record reveals, in addition to the Promissory Note, Mr. Gritz's companies had a number of loans from BOA and through the Limited Guaranty agreements, Mr. Gritz guaranteed these corporate liabilities as well, which were separate and apart from the liabilities under the Promissory Note. (See Pl.'s Ex. E, BOA Demand Letter; Gritz Dep. at 74-

---

[3] At oral argument, counsel for Mr. Gritz acknowledged that the Limited Guaranty agreements do not mention Mr. Gritz in his personal capacity. (Oral Argument Tr. at 25.) Counsel further stated that, in order to construe the Limited Guaranty agreements as applying to Mr. Gritz in his personal capacity, "[y]ou have to take a couple of step calculations that I'm not, I'm acknowledging that you know it's not the smoothest, easier type of argument to make . . . ." (Oral Argument Tr. at 25.)

5

75.) No reasonable person could believe Mr. Gritz's argument that, years after he personally entered into a $2,899,629.03 Promissory Note with BOA, BOA decided, for no apparent business purpose, to enter into two Limited Guaranty agreements limiting Mr. Gritz's personal liability on that Note to $500,000.

As a result, because the loan documents are unambiguous, extrinsic evidence in the form of Mr. Gritz's testimony regarding alleged statements by bank officers that his maximum exposure to BOA would be $500,000 as a result of the Limited Guaranty agreements is not admissible in determining the meaning of the loan documents. Accordingly, Mr. Gritz's Petition must be denied.[4] See Kennington Ltd, Inc. v. Wolgin, No. 89-80, 1989 WL 55395, at *6 (E.D. Pa. May 23, 1989) (refusing to consider extrinsic evidence in support of a petition to open confessed judgment because the terms of the promissory note at issue were unambiguous); Iron Worker's Sav. & Loan Ass'n v. IWS, Inc., 622 A.2d 367, 372 (Pa. Sup. Ct. 1993) ("Since the mortgage note upon which judgment was confessed is *unambiguous* in regard to the loan term, we find that the lower court correctly ruled that parole evidence was inadmissible to vary the terms of the written contract.").

---

[4] Counsel for Mr. Gritz conceded that without any ambiguity in the loan documents, extrinsic evidence is inadmissible. (Oral Argument Tr. at 9, 28.) When pressed at oral argument, counsel for Mr. Gritz could not identify any ambiguous language in the loan documents. (See Oral Argument Tr. at 5-9.)

## V. CONCLUSION

For the foregoing reasons, the Court denies Mr. Gritz's Petition to Open Judgment by Confession and for Stay of Execution.  An appropriate Order will follow.

BY THE COURT:


S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE